UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRESA AUSTIN,

      Plaintiff,

v.                                                                          Case No. 1:19-cv-970

                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff filed this application on August 27, 2016, alleging a disability onset date of September 24, 2012. PageID.33. Plaintiff later amended the onset date to August 1, 2015. *Id.* The amended onset date is consistent with the administrative record, which reflects that an administrative law judge (ALJ) entered a decision denying plaintiff's previous application for benefits on July 31, 2015. PageID.33, 120-130. Plaintiff identified her disabling conditions as: ulcerative colitis [Crohn's disease]; fibromyalgia; left shoulder-acromioclavicular joint bone spurs; bone spurs in both feet; [cranial] migraines; severe neck pain; underactive thyroid; obesity; and severe leg cramps.[1] PageID.221. Prior to applying for DIB, plaintiff earned a GED and had past employment as a housekeeper, a school bus driver, and a cashier. PageID.41, 222. An ALJ

---

[1] Plaintiff refers to her leg cramps as "severe leg cramps 24 hrs". PageID.221.

reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on October 31, 2018.  PageID.33-43. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.   42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).   "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

While the ALJ found that plaintiff was not disabled at the fourth step of the evaluation, he continued the review through the fifth step.  At the first step, the ALJ found that

plaintiff had not engaged in substantial gainful activity since the amended onset date of August 1, 2015, through her date last insured of June 30, 2017.  PageID.36.  At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: calcaneal bone spurs on bilateral feet; cervical and lumbar degenerative disc disease; osteoarthritis; Crohn's disease; and obesity.  *Id*.  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.37.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b). Specifically, she could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could sit up to eight hours in an eight-hour workday; and could stand and/or walk up to eight hours in an eight-hour workday. In addition, the claimant did not require an assistive device for ambulation; and had no reaching or manipulative limitations. The claimant had no limitations of the bilateral lower extremities for the operation of foot controls. Additionally, the claimant had no postural or environmental limitations. Further, the claimant could be exposed to a noise level of moderate level (SCO) equal to an office environment.

PageID.38.  The ALJ also found that through the date last insured, plaintiff was capable of performing her past relevant work as a "cashier II".  PageID.41.  This work did not require the performance of work-related activities precluded by her residual functional capacity (RFC).  *Id*.

Although plaintiff was capable of performing her past relevant work, the ALJ proceeded to the fifth step.  The ALJ determined that, through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.41-42.  Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as telephone clerk (56,000 positions), final assembler (21,000 positions), and table worker (10,000 positions).  PageID.42.  Accordingly, the

4

ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 1, 2015 (the amended onset date) through June 20, 2017 (the date last insured). PageID.43.

## III.   DISCUSSION

Based on review of plaintiff's initial brief, the Court gleans one issue with two subparts for review.[2]

> **The ALJ improperly found that plaintiff's claim was barred by res judicata contrary to *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018) and in doing so failed to consider plaintiff's worsening condition as shown on an MRI from 2016.**

### 1.   Res judicata issue

Plaintiff contends that the ALJ failed to comply with the requirements of *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018) because the ALJ addressed her present application for DIB as precluded by res judicata.  By way of background, plaintiff filed a claim for DIB on July 9, 2013, alleging a disability onset date of September 24, 2012.  PageID.120-130.  As discussed, the ALJ denied this claim on July 31, 2015 finding that "[t]he claimant has not been under a disability, as defined by the Social Security Act, from September 24, 2012, through the date of this decision."  PageID.130.  Plaintiff appealed the decision, which the undersigned affirmed on June 20, 2017.  *See Austin v. Commissioner of Social Security*, 1:16-cv-998 (Opinion and Judgment) (W.D. Mich. June 20, 2017).  The Sixth Circuit affirmed on appeal, *Austin v. Commissioner of Social Security*, 714 Fed. Appx. 569 (6th Cir. 2018).

---

[2] Contrary to the Court's instructions, plaintiff did not file a Statement of Errors "setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand." Notice (ECF No. 7).  "Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue."  *Id.*

On August 27, 2016, while case 1:16-cv-998 was pending in this Court, plaintiff filed her present application for DIB with an amended disability onset date of August 1, 2015 (the day after the ALJ denied her previous DIB claim). PageID.33. After the agency denied plaintiff's present application, the ALJ held a hearing and entered his October 31, 2018 decision, which addressed both of her applications as follows:

> The undersigned denied the claimant in a prior application on July 31, 2015 (Exh. B1A). This claim was appealed to federal court which found that the undersigned's decision was supported by the substantial evidence and affirmed the unfavorable decision (Exh B4A). The undersigned has considered Acquiescence Ruling 98-4 (6) and *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997)) in adjudicating this claim [FN 1]. For the reasons explained in this decision, the undersigned finds that the prior decision continues to be supported by the substantial evidence through the date last insured as there is no new and material evidence to support a different residual functional capacity. Therefore, under the guidance of *Drummond*, as discussed in greater detail in the body of this decision, the undersigned finds no new or material evidence to alter the previously unfavorable residual functional capacity.

PageID.33.

The ALJ explained the methodology for evaluating plaintiff's RFC at step four:

> Under the Social Security Administration (SSA) policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative *res judicata* with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative *res judicata*.

> Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period. <u>The Sixth Circuit concluded that where a final decision of SSA after a hearing on a prior disability claim contains a finding of a claimant's residual functional capacity, SSA may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the</u>

claimant's residual functional capacity (Acquiescence Ruling 98-4 (6); *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997)).

> In this case, the undersigned finds that the current claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final decision on the prior claim, and, as demonstrated below, the undersigned finds that the record does **not** contain new and additional evidence that provides a basis for a different finding of the claimant's residual functional capacity. As discussed more fully below, the claimant's allegations, symptomology and objective findings remained relatively the same.

PageID.38 (emphasis added) (boldface in original).

The referenced Acquiescence Ruling (AR) 98-4(6) addressed the Sixth Circuit's

decision in *Drummond* and provides in pertinent part,

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators <u>must adopt</u> such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-6(4) (footnotes omitted) (emphasis added).

In *Earley*, 893 F.3d 929, the Sixth Circuit reversed the decision of an ALJ who gave

an overly expansive construction to *Drummond*:

> [The claimant] Earley applied for benefits in 2010. In 2012, Judge Redmond marched through the five-step analysis, found her capable of light work, and decided she was not disabled because a sufficient number of light-work jobs were available to her.
>
> In 2012, Earley filed a new application for benefits, seeking benefits for a new period, namely from May 16, 2012 forward. Judge Redmond reviewed her case again. Instead of asking whether the evidence supported Earley's new application, Judge Redmond thought he was precluded by the first ruling. In his view, he was "bound by the findings of [the] previous Administrative Law Judge" because Sixth Circuit case law gave those findings "preclusive effect." A.R. at 22.
>
> That is not how it works. An individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of

it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold.

*Earley*, 893 F.3d at 932.  In this regard, the court recognized that,

> [A]n applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application. But she should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals.

*Id*. at 933-34.  In addition, the court observed that,

> Fresh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making.

*Id*. at 934.

The question for the Court is whether the ALJ provided an "independent" or "fresh" review of plaintiff's claim.  Based on the record, the Court concludes that the ALJ did not.  The ALJ commenced his review of plaintiff's application based on the premise that he had to accept the RFC set forth in the July 31, 2015 decision:

> [W]here a final decision of SSA after a hearing on a prior disability claim contains a finding of a claimant's residual functional capacity [*i.e.*, the July 31, 2015 decision], SSA may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim [*i.e.*, plaintiff's August 1, 2015 application] unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity.

PageID.38.  Contrary to *Earley*, the ALJ did not take an independent or fresh review of plaintiff's new claim based upon her medical condition commencing from August 1, 2015, and then consider the previous RFC "to strive for consistent decision making", *See Earley*, 893 F.3d at 933-34. Accordingly, plaintiff's requested relief will be granted.  This matter will be reversed and

remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate plaintiff's RFC during the relevant time period.

### B.    The December 3, 2016 MRI

In addition, plaintiff contends that her most recent MRI from December 3, 2016 (PageID.435-436), when compared with a past MRI from November 30, 2014 (PageID.435), indicated a worsening of her condition, by showing objective evidence of multilevel spondylosis with bulging disc.  Plaintiff's Brief (ECF No. 13-1, PageID.720).  The link between the two MRIs appears on the December 3, 2016 report which states, "COMPARISON: 11/20/2014." PageID.435.

The ALJ addressed the December 2016 MRI as follows:

> In late 2016, imaging of her cervical spine was taken. The imaging revealed multilevel spondylosis with bulging of the discs and some associated disc osteophyte complex type defects from C3-4 through C6-7; some paracentral small protrusions at C3-6; narrowing at the neuroforamina; and mild relative narrowing of the spinal canal at C3-6 levels (Ex. B3F/19-20). Subsequently, imaging of her lumbar spine was also taken, and revealed mild to moderate degenerative changes (Ex. B3F/17).

PageID.40.

In finding that plaintiff's condition had not worsened since July 31, 2015, the ALJ stated:

> As for the opinion evidence, the undersigned gives the opinions of the State agency medical consultant, Myung Ho Hahn, M.D., great weight. Dr. Hahn opined that there was no worsening or progression of her impairments (Ex. B2A). This opinion is given great weight, as it is consistent with the record as a whole.

PageID.40.

Dr. Hahn's opinion, issued on November 7, 2016, adopted the ALJ's RFC from July 31, 2015, based in part on Sixth Circuit caselaw:

> This is Drummond and Dennard Case.  There's ALJ decision on 7/31/2015.
> There's no new material since ALJ decision.   There's also no worsening or
> progression of preexisting MDIs.   Therefore, ALJ decision is adop[t]ed.

PageID.139-140 (emphasis omitted).  The Court makes two observations with respect to Dr.

Hahn's opinion.   First, Dr. Hahn adopted the July 31, 2015 RFC based on his interpretation of

*Drummond*.   Second, Dr. Hahn's conclusion that there was no worsening of plaintiff's condition

did not include a review of the December 3, 2016 MRI, which was taken about a month after the

doctor gave his opinion.   PageID.140-142.

Based on this record, it is unclear how the ALJ viewed the December 2016 MRI.

Neither the ALJ nor Dr. Hahn referred to this MRI as evidence of plaintiff's worsening condition

under the *Drummond* standard.   Nor did the ALJ develop a new RFC based on that MRI.   An ALJ

"must articulate, at some minimum level, his analysis of the evidence to allow the appellate court

to trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).   "It is more

than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources

of evidence. It is absolutely essential for meaningful appellate review."  *Hurst v. Secretary of

Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).   Accordingly, on remand, the

ALJ should address the significance of the December 2016 MRI.

## IV.    CONCLUSION

Accordingly,    the    Commissioner's    decision    will    be    **REVERSED**    and

**REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).   On remand, the Commissioner is

directed to re-evaluate plaintiff's RFC during the relevant time period, giving attention to the

December 3, 2016 MRI results.   A judgment consistent with this opinion will be issued forthwith.

Dated: March 19, 2021                                    /s/ Ray Kent
                                                         RAY KENT
                                                         United States Magistrate Judge